## COLLINS v. McLEMORE.
### No. 5547.

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

S. M. Cagle, of Coushatta, for appellant.

Henry W. Bethard, Jr., of Coushatta, for appellee.

HAMITER, Judge.

This proceeding, which is in the nature of a possessory action, involves a tract of land in Red River parish, La., containing approximately 13 acres. P. L. Collins instituted it on December 23, 1935, under the allegations that P. C. McLemore is trespassing on and attempting to deprive him of his tract. He prayed in substance for the issuance of a temporary restraining order, and in due course for preliminary and permanent writs of injunction, restraining McLemore from trespassing on and taking possession of the property. Recognition of his alleged ownership was not requested. The temporary restraining order issued on presentation of the petition to the district judge. Thereafter, and after a hearing on rule, the court granted a preliminary writ of injunction. McLemore's answer generally denied the allegations of the petition.

On February 24, 1936, the said McLemore brought a possessory action against the said Collins, alleging in effect that he, McLemore, is the owner of said 13-acre tract, and as such owner has had for more than one year prior to the disturbance complained of by him the real, actual, quiet, and uninterrupted possession thereof; that the said Collins, on or about February 22, 1936, unlawfully entered upon the said property and disturbed his possession by erecting a barbed-wire fence across it; that less than a year has elapsed since the disturbance occurred. He prayed for the issuance of a temporary restraining order enjoining Collins from interfering or disturbing his possession of the property, and that, after hearing, a preliminary writ of injunction be issued, and on final trial such writ be perpetuated and made permanent. He further prayed that he be quieted in the possession of said property. The restraining order was granted, and after the hearing on the rule the preliminary writ of injunction issued. Collins answered, denying the material allegations of the petition.

For the sake of convenience, we shall herein refer to the proceeding instituted by Collins as the first suit, and the one brought by McLemore as the second suit.

The cases were not consolidated for the purpose of trial, but were tried on the same day. All evidence adduced in the first suit was, pursuant to an agreement of counsel, made a part of the record of the second suit. After the trials, there was judgment in the first suit rejecting the demands of Collins at his cost, and recalling, annulling and rescinding the preliminary writ of injunction previously issued. In the second suit, McLemore was awarded judgment as prayed for. Collins prosecuted an appeal in each case.

As the two proceedings involve practically the same facts and issues, we shall consider and discuss them together. This policy was pursued by counsel in the preparation and filing of their briefs. However, our decree, hereinafter given, concerns only the first suit.

The documentary evidence in the records, which was offered and ordered filed for the restricted purpose of showing the character and extent of possession of the property, and the testimony of the witnesses and agreement of counsel reveal the following facts:

Under deed dated December 6, 1901, Alex M. and Mrs. B. W. Lisso conveyed unto John T. S. Thomas, the following described property: "That certain tract of land lying and being situated in Sections 24 and 25, in Twp. 12, Range 10, same being bounded on the west and south by Red River on the North by lots in the Town of Coushatta, said line being now the fence on the northern boundary; and on the East by the public road leading from Coushatta down Red River said tract of land containing 40 acres, more or less, and being the property known as the 'Lisso Place', same being situated in the incorporate limits of the Town of Coushatta

504

with all the improvements thereon and thereto belonging this to include also the batture formed on said place."

On December 28, 1903, J. T. S. Thomas transferred to Mrs. B. F. Elliott: "A certain lot in the South East corner of the property known as the J. T. S. Thomas place situated within the corporate limits of the Town of Coushatta, commencing at a stob on the bank of Red River, running in a northerly direction and parallel with Clark Street sixty-nine yards to a stob, thence in a westerly direction sixty-nine yards to a stop, thence in a southerly direction sixty-nine yards to a stob, thence in an easterly direction to point of beginning, containing 4761 square yards."

A deed dated September 15, 1904, executed by J. T. S. Thomas in favor of J. A. Melton and P. C. McLemore covered the following property:

"That certain tract of land, being, lying and situated in Sections 24 and 25, Township 12, Range 10, same being bounded on the west and south by Red River, on the northern boundary and on the east by the Public Road leading from Coushatta down Red River, containing 40 acres, more or less, said property being originally known as the Lisso Place, except a certain lot of ground in the southeast corner of above described property, donated by this vendor to Mrs. G. B. Elliott on December 28, 1903, recorded in Book L, p. 304, January 1, 1904, said lot containing one acre.

"This sale of above described land (40) acres, more or less, includes all accretions, batture formed on said place, together with all improvements thereon and appurtenances thereto belonging."

Later, J. A. Melton conveyed his interest in the last-described tract to the said P. C. McLemore.

The following property was described in a deed dated September 14, 1918, from Mrs. B. F. Elliott to P. C. McLemore:

"A certain lot in the SE corner of the property known as the J. T. S. Thomas place now owned by P. C. and J. M. McLemore, situated within the corporate limits of the Town of Coushatta, commencing at a stob on the bank of Red River, running in a northernly direction and parallel with Clark Street 69 yards to a stob, thence in a westernly direction 69 yards to a stob, thence in a southernly direction 69 yards to a stob, thence in an easterly direction to point of beginning, containing

4761 square yards, together with all accretion that has or may hereafter be formed, thereto. Being the same property acquired by this vendor by act of donation from her father, J. T. S. Thomas.

"Together with all the improvements thereon, lying and situated in the Parish of Red River."

Under date of March 4, 1926, P. C. McLemore acquired from Roy P. Hayes: "All alluvial, batture, accretion, sandbars, and formations of land formed in front of the following described property, to-wit: Fractional north half of Northeast Quarter of Section 25, Township 12 North, Range 10 West, Louisiana Meridian, being a portion of the Fernandez Grant No. 38 Red River Parish, Louisiana, and being the same property acquired by J. R. Hayes in act of partition with D. H. Hayes, dated January 16, 1882, as recorded in Book C of Conveyances, p. 282 of the official records of the Parish of Red River, Louisiana."

The conveyance of the following property was made by P. C. McLemore to the Red River Real Estate Corporation, Inc., on November 25, 1935:

"A certain tract of land purchased by J. A. Melton and P. C. McLemore from J. T. S. Thomas on September 15, 1904, as shown by act of record in Book L, p. 705, of the Conveyance Records of Red River Parish, Louisiana, being more particularly described as follows:

"That certain tract or parcel of land lying and situated in Section 24 and 25 of Township 12 North Range 10 West, bounded on the West and South by the stream of Red River, on the north by Lots in the Town of Coushatta, and on the east by the Public Road leading from Coushatta down Red River; and containing forty (40) acres, more or less, and originally known as the Lisso Place, together with all accretions, alluvion, sand bars and the like accrued to and now forming a part of said place, and containing in the aggregate 200 acres, more or less, in the parish of Red River, together with all buildings and improvements thereon."

A deed containing the last-mentioned description was executed on December 4, 1935, by the said Red River Real Estate Corporation, Inc., in favor of P. L. Collins.

The property which forms the basis of the controversies herein discussed is that described in the deed from Mrs. B. F. El-

liott to P. C. McLemore, dated September 14, 1918. The lot therein specifically referred to approximates one acre, while the accretion thereto, formed by reason of changes in Red river, comprises about 12 acres. This accretion runs south of the lot and is one acre wide. The lot and its accretion, all of which will be hereafter referred to as the Elliott tract, lies between the property owned by McLemore and covered by the above-mentioned deed executed in his favor by Hayes, and the property admittedly owned by Collins and described in the deed from Thomas to Melton and McLemore. The Hayes property is east of the Elliott tract, while the Thomas tract is west thereof.

Collins had nothing to do with the Elliott tract prior to December 4, 1935, the date of the deed from the Red River Real Estate Corporation, Inc., to him. His injunction suit was filed December 23, 1935. McLemore went into the real and actual possession of the entire contested tract when he acquired it from Mrs. Elliott in 1918, and that possession continued uninterruptedly until the issuance of the temporary restraining order in the first suit. The attempted inclosure of it by Collins under a barbed-wire fence on or about February 22, 1936, was responsible for the institution of the second suit by McLemore.

It is the contention of Collins that he acquired the disputed 13 acres through the deed from McLemore to the Red River Real Estate Corporation, Inc., and the deed from the latter to him. McLemore's position is that he has never divested himself of the title thereto. He points out that his deed to the Red River Real Estate Corporation, Inc., provides for the conveying of "a certain tract of land purchased by J. A. Melton and P. C. McLemore from J. T. S. Thomas on September 15, 1904, as shown by act of record in Book L, page 705, of the Conveyance Records of Red River Parish, Louisiana, * * *" and that in the Thomas act of conveyance, just-mentioned, the Elliott tract was specifically excepted and excluded.

The complaining plaintiff in each of the cases under consideration seeks only relief concerning his alleged possession. Neither prays for recognition as owner of the property, and his respective action cannot be deemed petitory in nature. Both cases must be viewed in the light of the principles and laws governing the possessory action.

"The possessory action, which is a branch of real actions, may be brought by any possessor of a real estate, or of a real right, who is disturbed either in the possession of the estate or in the enjoyment of the right, against him who causes the disturbance, in order to be maintained in, or restored to the possession, whether he has been evicted or disturbed; provided his possession be accompanied by the qualifications hereafter required." Code Practice, art. 46.

"The possessors entitled to bring these actions are those who possess as owners.

"Persons entitled to the usufruct or to the use of a real estate, and others having real rights growing from such real estate, may also bring their action, when disturbed in the enjoyment of their rights." Code Practice, art. 47.

The essential elements of a possessory action are recited in Code of Practice, art. 49, viz.:

"In order that the possessor of a real estate, or one who claims a right to which such estate may be subjected, may be entitled to bring a possessory action, it is required:

"1. That he should have had the real and actual possession of the property at the instant when the disturbance occurred; a mere civil or legal possession is not sufficient;

"2. That he should have had that possession quietly and without interruption, by virtue of one of the titles prescribed in the forty-seventh article, for more than a year previous to his being disturbed; provided the possession of less than one year be sufficient, in case the possessor should have been evicted by force or by fraud;

"3. That he should have suffered a real disturbance either in fact or in law;

"4. That he should have brought his suit, at the latest, within the year in which the disturbance took place.

"When the possession of the plaintiff is accompanied with all those circumstances, it matters not whether he possesses in good or in bad faith, or even as a usurper, he shall nevertheless be entitled to his possessory action."

With reference to the proof of possession and disturbance thereof, we find in article 53 of the Code of Practice:

"The plaintiff in a possessory action needs only, in order to make out his case, to prove that he was in possession of the

property in question, in the manner required by this Code, and that he· has been either disturbed or evicted within the year previous to his suit.

"So that when the possession of the plaintiff, or the act of disturbing him is denied, no testimony shall be admitted, except as to the fact of the possession, or as to the act of disturbance; and all testimony relative to property shall be rejected."

In actions of the character under consideration, ownership of property cannot be established; an inquiry into the title thereto is not permissible. Moran v. City of New Orleans, 170 La. 499, 128 So. 290; Producers' Oil Company v. Hanszen, 132 La. 691, 61 So. 754; Collins v. Heath, 15 La.App. 370, 131 So. 479.

Only the matter of possession may be passed upon in these cases, and the instruments of conveyance filed in evidence are to be considered for that restricted purpose.

As Collins did not have the real and actual possession of the property when the complained of trespass occurred, such possession being essential under the above-quoted codal provision, he cannot maintain the action resorted to by him. The trial court correctly rejected his demands in the first suit.

With reference to the second suit, we think that McLemore is entitled to the relief sought by him. He alleged· and proved all of the elements essential for the maintenance of the possessory action. The real and actual possession of the property was his when the disturbance commenced. He had enjoyed that possession, as owner, quietly and without interruption for more than a year previous to his being disturbed. His disturbance was real and in fact, and he instituted his suit before the expiration of a year thereafter.

In making the foregoing observation, we do not establish title to the Elliott tract in McLemore or recognize him as the owner thereof. As before stated, we are not permitted in these proceedings to make inquiry into the title. A determination of the question of whether or not McLemore conveyed· his interest in the tract under consideration when he executed the deed to the Red River Real Estate Corporation, Inc., requires a construction of the deed. That can be made by the courts of competent jurisdiction only in a direct action. The patent ambiguity contained in the description of the property conveyed under the last-mentioned deed justifies McLemore's claim, and our holding, that he possesses as owner.

For the reasons herein given, the judgment of the trial court is affirmed.