STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 22-300

TERRI L. BABINEAUX

VERSUS

DOUGLAS W. STONICHER, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 20-C-2069-A
HONORABLE GREGORY JAMES DOUCET, DISTRICT JUDGE

**********

GARY J. ORTEGO
JUDGE

**********

Court composed of Chief Judge Sylvia R. Cooks, Charles G. Fitzgerald, and Gary
J. Ortego, Judges.

AFFIRMED.

Fitzgerald, J., dissents and assigns reasons.

**Kay Karre Gautreaux**
**Attorney at Law**
**405 W. Convent St.**
**Lafayette, LA 70501**
**(337) 232-7747**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Terri L. Babineaux**

**Florencia Ibanez**
**Granger & Trant**
**284 E.Martin Luther King Drive**
**Grand Coteau, LA 70541**
**(337) 662-3902**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Douglas W. Stonicher**
  **Rachel Stonicher**

**ORTEGO, Judge.**

This case involves a dispute between two landowners regarding the nature of a conventional right-of-passage servitude. The trial court found that the servitude was predial.

After de novo review, we find no error in the trial court's judgment. The servitude is presumed to be predial, and the evidence in the record fails to rebut that presumption.

## FACTS AND PROCEDURAL HISTORY

The properties at issue in this matter were part of a single tract of land consisting of 39.812 acres in St. Landry Parish, owned by Easton Guidry and Philomeno Bacque Guidry, a married couple. After the couple was deceased, the land was inherited by their four children. On July 12, 1976, the four children partitioned the property. Patsy Ruth Guidry Begnaud (Patsy) acquired ownership of "Tract 3," which shared its western boundary with the eastern boundary of "Tract 2," acquired by Druscilla Guidry Olivier (Druscilla).[1] Clarance Cormier Road is the only public road which borders either of "Tract 2" and "Tract 3." The public road runs east and west along the northern border of the two tracts.

On May 25, 1982, Druscilla subdivided "Tract 2" into "Tract 2B 1" and "Tract 2B 2." Druscilla sold "Tract 2B 2" to Steve E. Hooper, Terri L. Babineaux (Babineaux), and Ricky Lavergne. Druscilla retained "Tract 2B 1" which is located directly to the south of "Tract 2B 2." The subdivision and sale resulted in "Tract 2B 1" having no access to a public road.

---

[1] We note that in the record Druscilla signed her name on certain documents as "Drusilla" without a "c" in the spelling of her name, however, there are instances within the documents where her name is spelled with a "c", we will use the spelling "Druscilla" throughout this opinion, as representing either spelling.

1

Thereafter, in March of 1985, Patsy sold a portion of "Tract 3" to Joseph Edward Davis, Jr. and Mary Butcher Davis. The 1985 Cash Sale included language that created a right-of-passage that states (emphasis added):

> Vendor [Patsy] reserves to herself for the benefit of her sister, Druscilla Guidry Olivier, or her assigns, a 20 foot right-of-passage along the western boundary of the property sold herein, a distance of 937.87 feet, all as more fully shown on *the attached plat of survey*.

"The attached plat of survey" referenced in the 1985 Cash Sale has a clearly designated "20' RIGHT OF PASSAGE" that runs along the western boundary of "Tract 3," the servient estate/tract, that it shares with "Tract 2B 2" and "Tract 2B 1." The right-of-passage created provides "Tract 2B 1," a dominant estate/tract, with access to Clarance Cormier Road. The right-of-passage has a notation "937.87" indicating its length. The drawing depicting the servitude on the Plat does not place the dash marks along the entire length of the boundary between "Tract 2" and "Tract 3." However, the length of the shared boundary between the two tracts is in fact 937.87 feet. Both the 1985 Cash Sale and attached plat of survey were filed in the public records of St. Landry Parish on March 18, 1985. The nature of this right-of-passage in the 1985 Cash Sale is the sole issue in this case.

Thereafter, on January 28, 1994, Babineaux purchased "Tract 2B 1," from Druscilla. According to Babineaux's testimony, she was aware of the predial right-of-passage, she enjoyed its use without interruption for the next 15-20 years through multiple owners of "Tract 3," and she further testified that she would not have purchased "Tract 2B 1" without the right-of-passage due to her plans to divide or sell the tract.

On May 12, 2004, Douglas W. Stonicher and Rachael A. Stonicher (the Stonichers) purchased 5.60 acres in St. Landry Parish consisting of the western part of "Tract 3" that borders "Tract 2B 1" and "Tract 2B 2." Eventually, a disagreement arose between Babineaux and the Stonichers regarding the right-of-passage created in the 1985 Cash Sale.

On June 4, 2020, Babineaux filed a petition for mandatory injunction, prohibitory injunction, and damages against the Stonichers for allegedly building obstructions on the right-of-passage preventing her usage thereof. After various filings, a trial was held resulting in the trial court finding the right-of-passage recited in the 1985 Act of Sale is a predial servitude. The Stonichers appeal, assigning three errors.

## ASSIGNMENTS OF ERROR

1.  The trial [c]ourt erred by failing to consider the language contained in the 1985 Cash Sale which created the [right-of-passage] in determining the servitude to be predial in nature.

2.  The trial court erred in applying *Tate v. South Central Bell Telephone Co.*, [386 So.2d 139 (La.App. 3 Cir.1980)] to the issue of determining the nature of a right-of-passage as the *Tate* [c]ourt addressed only whether plats of survey can establish servitudes generally. The nature of the right-of-passage as predial or personal was not at issue in that case nor was it considered by the court.

3.  The [t]rial [c]ourt erred by delving into the intent of the parties to this 1985 Cash Sale because the parties seeking to enforce or denounce the existence of a predial servitude were not parties to the establishing act under the holding in *Brunson v. Crown Brake, LLC*,[18-994 (La.App. 3 Cir. 6/19/19), 275 So.3d 432, *writ denied*, 19-1184 (La. 10/15/19), 280 So.3d 613].

*I. Standard of Review*

An appellate court reviews the factual findings of a trial court under the manifest error-clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The trial court's legal conclusions on questions of law, however, are reviewed de novo. *Brunson v. Crown Brake, LLC*, 18-994 (La.App. 3 Cir. 6/19/19), 275 So.3d 432, *writ denied*, 19-1184 (La. 10/15/19), 280 So.3d 613.

The nature of a servitude created in a contract and whether it exists on immovable property are issues of law requiring de novo review. See *Platt v. Rimmer*, 16-223 (La.App. 3 Cir. 10/12/16), 203 So.3d 553. Questions of law are reviewed by this court using the proper analysis applicable to the question of law previously before the trial court to determine whether the trial court was legally correct in its findings. *Litel Explorations, LLC v. Aegis Dev. Co., LLC*, 21-741 (La.App. 3 Cir. 4/6/22), 337 So.3d 940.

*II. Determining the Nature of the 1985 Cash Sale Servitude*

The Stonichers, in their three assignments of error, assert erroneous analysis by the trial court in reaching its judgment. Given that the standard of review applicable to this case is de novo, we review the case without reliance on the trial court's findings. Rather, we must use the proper analysis to determine whether the trial court was legally correct in its findings.

"There are two kinds of servitudes: personal servitudes and predial servitudes." La.Civ.Code art. 533. "A personal servitude is a charge on a thing for the benefit of a person." La.Civ.Code art. 534. "The personal servitude of right of use confers in favor of a person a specified use of an estate less than full enjoyment." La.Civ.Code art. 639.

4

Contrarily, "[a] predial servitude is a charge on a servient estate for the benefit of a dominant estate." La.Civ.Code art. 646. "Predial servitudes may be natural, legal, and voluntary or conventional. Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or conventional servitudes are established by juridical act, prescription, or destination of the owner." La.Code Civ.P. art. 654. "The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate." La.Code Civ.P. art. 705.

Here, we do not have an express declaration that the right-of-passage servitude granted to Druscilla Guidry Olivier, or her assigns, in the 1985 Cash Sale is predial or personal in nature. Therefore, we must determine whether the right-of-passage created by Patsy is a personal or predial servitude.

> When the instrument does not so designate the kind of right, the resolution of the question becomes a matter of contractual interpretation and is governed by both the general rules of construction of juridical acts and the rules of construction applicable specifically to instruments purporting to create servitudes. Under these rules of interpretation the intention of the parties must govern.

*Deshotels v. Fruge*, 364 So.2d 258, 260 (La.App. 3 Cir.1978).

The parties do not dispute that the instrument creating the right-of-passage, the 1985 Cash Sale, is a contract. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.

5

The language in the 1985 Cash Sale creating the servitude, of passage is as follows:

> Vendor [Patsy Rush Guidry Begnaud] reserves to herself for the benefit of her sister, Druscilla Guidry Olivier, or her assigns, a 20 foot right-of-passage along the western boundary of the property sold herein, a distance of 937.87 feet, all as more fully shown on the attached plat of survey.

"When the act does not declare expressly that the right granted is for the benefit of an estate or for the benefit of a particular person, the nature of the right is determined in accordance with the following rules." La.Civ.Code art. 732. "When the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude." La.Civ.Code art. 733.

Here, the nature of the right-of-passage granted confers a significant advantage to the estate at issue, "Tract 2B 1." In 1985 when the cash sale was confected, without the right-of-passage created in the Act of Sale, "Tract 2B 1" would have no access to a public road, and, thus, remain landlocked. With the sale of "Tract 3" Druscilla would lose the ability to access to "Tract 2B-1", which her sister historically allowed. Thus, we begin our analysis with the presumption that the right-of-passage created in the 1985 Cash Sale is predial.

We reject the Stonichers' argument that the right-of-passage is presumed personal because predial servitudes, in general, are disfavored per La.Civ.Code art. 730, which states, "[d]oubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." We find this interpretation lacks merit.

Louisiana Civil Code Article 730 codifies a line of jurisprudence as far back as *Parish v. Municipality No. 2*, 8 La.Ann. 145, 147 (1853), when the Louisiana Supreme Court addressed servitudes, in general. In that case, the court stated,

6

"[s]ervitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law."

But, in *Rockholt v. Keaty*, 256 La. 629, 237 So.2d 663 (1970), the Louisiana Supreme Court noted the benefit to the public of keeping valuable property in commerce when specifically discussing a right-of-passage predial servitude for the benefit of a dominate estate to have access to a public road. This public benefit is codified in La.Civ.Code art. 689, which states, "[t]he owner of an estate that has no access to a public road or utility may claim a right of passage over neighboring property to the nearest public road or utility."

"It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, the statute specifically directed to the matter at issue must prevail as an exception to the more general statute." *Fontenot v. Reddell Vidrine Water Dist.*, 02-439, p. 20 (La. 1/14/03), 836 So.2d 14, 28. Here, Druscilla Guidry Olivier is deceased. If we were to find that the servitude contracted in the 1985 Cash Sale was personal in nature, "Tract 2B 1" becomes landlocked and removed from public commerce. Accordingly, we find the Stonichers' interpretation of La.Civ.Code art. 730 for the proposition that the servitude should be presumed personal is not supported by the jurisprudence.

Next, the Stonichers cite the language of La.Civ.Code art. 734, and point out that the 1985 Cash Sale's failure to include "heirs" is evidence that the servitude in question cannot be considered predial. We disagree.

"When the right granted is merely for the convenience of a person, it is not considered to be a predial servitude, unless it is acquired by a person as owner of an estate for himself, his heirs and assigns." La.Civ.Code. art. 734. Here, the language of the 1985 Cash Sale does not have the specific language included in La.Civ.Code

7

Art. 734. The language of the 1985 Cash Sale is that the right-of-passage is for Druscilla Guidry Olivier, the owner of the estate, followed with "or her assigns" rather than stating that the right-of-passage is for Druscilla or her "heirs and assigns."

The omittance of "heirs" in the right-of-passage created in the 1985 Cash Sale does not necessitate a finding that the servitude cannot be considered predial. The words of a contract are to be understood "in the common and usual signification." La.Civ.Code art. 1946. "Heir" is a general term which is commonly understood to encompass those who inherit by operation of law. An heir is an intestate successor. La.Civ.Code art. 876. "Assigns," per La.Civ.Code art. 3506 (5), "means those to whom rights have been transmitted by particular title; such as sale, donation, legacy, transfer or cession." Therefore, an heir is more restrictive as to who can be classified as such in comparison to an assign. When conferring a right to exercise a servitude, heirs are limited to certain individuals who inherit by operation of law, while an assign can be any individual who can be transferred the original owner's right to exercise a servitude. Thus, omitting "heirs" while including "assigns," does not necessitate a finding that a servitude is not predial. Rather, including the phrase "or her assigns" indicates that the right-of-passage was intended to be transferable, thus making it a predial servitude.

In applying basic contract interpretation of the 1985 Cash Sale, this court finds that parties could not have had the common intent to create a personal servitude. "A personal servitude is a charge on a thing for the benefit of *a person*." La.Civ.Code art. 534 (emphasis added). A right-of-passage can be a personal servitude if it "confers in favor of *a person* a specified use of an estate less than full enjoyment." La.Civ.Code art. 639 (emphasis added). The language of La.Civ.Code art. 534 and

8

La.Civ.Code art. 639, "a person," indicates that a personal servitude confers a right to a singular individual. While the language of the instrument references Druscilla Guidry Olivier, it more importantly provides that the right can be exercised by her assigns. The inclusion of the language "or her assigns" in the 1985 Cash Sale indicates that the parties contemplated and intended for Druscilla to eventually assign the right-of-passage to another. Thus, we find that language of the 1985 Cash Sale does not limit the right-of-passage to Druscilla Guidry Olivier, personally.

We find the operative language in the 1985 Act of Sale is the inclusion of the words "or her assigns" because the inclusion of those words, rather than only Druscilla's name, demonstrates the parties' intent to create a servitude providing a perpetual advantage to the adjoining tract of land owned at the time by Druscilla, extending far into the future to all assigns of the property. The word "assigns" is a broader term than "heirs", and includes Druscilla's heirs, purchasers of the property, and anyone to whom she might donate the property or transfer title to the property. As the court noted in *Whitney Nat. Bank of New Orleans v. Poydras Ctr. Assocs.,* 487 So.2d 120, 123, (La.App. 4 Cir., 3/12/86) *writ denied*, 492 So.2d 1221 (La. 1986) (emphasis added). **"It matters not that the language of the Act was couched in personal terms, for the right created was a real advantage to the dominant estate. . ."**

An additional indicator of the parties' intent to create a predial servitude to *advantage the land* owned by Druscilla is the fact that Druscilla participated in the Act of Sale as a signatory to the sale making the representation in the Act of Sale that in exchange for the servitude being created by Patsy in the sale, Druscilla agreed to only divide the Tract into two parcels, and further agreed to restrict the use to a single family dwelling per Tract. The inclusion of "assigns" in the document

9

demonstrates that Patsy and Druscilla contemplated the long-term effect of dividing and selling Druscilla's land with the predial servitude in place to avoid ever landlocking the more remote piece of Druscilla's Tract.  The jurisprudence has also held that "**The benefit need not exist at the time the servitude is created; a possible convenience or a future advantage suffices to support a servitude**." La. C.C. art. 647. *Brehm*, 314 So.3d at 62.

In *Bernard v. Broussard*, 538 So.2d 1093, 1094–95 (La.App. 3 Cir. 1989), this court explained the significant import of the Act of Sale referencing the Plat of Survey depicting the servitude, as this court had previously held in *Tate*:

> It is well established that where one subdivides property by plat of survey which designates a right-of-way or servitude of passage and thereafter sells one or more tracts of land by reference to said survey, a servitude of passage is created thereby, regardless of whether or not the instrument in question specifically describes or makes reference to the servitude.*Tate v. South Cent. Bell Tel. Co.,* 386 So.2d 139 (La.App. 3 Cir.1980); *Triangle Development, Inc. v. Burns,* 469 So.2d 29 (La.App. 1 Cir.1985).  Such has been the holding of the courts of this State in cases involving the transfer of both urban and rural property. *Iseringhausen v. Larcade,* 147 La. 515, 85 So. 224 (1920).
>
> In *Bernard v. Somme,* 501 So.2d 893 (La.App. 5 Cir.1987), several heirs partitioned a tract of land, dividing same into eight separate parcels. Although the partition made no reference to a servitude of passage, the plat of survey referenced in said partition delineated a 10–foot strip traversing the southern boundary line of the property partitioned, designating same "For Road." In finding that a servitude of passage was created, the court stated, at page 895, the following:
>
>> Although the Act of Partition did not expressly establish a servitude of passage along the southern boundary of Lot 153, the surveyor's plat referenced in the property descriptions shows that a ten-foot strip traversing the length of the southern boundary of Lot 153 was designated 'For Road'. A portion of this area was shelled at the time the partition was executed. When there is such a discrepancy between the document transferring title and the surveyor's plat referenced in the property description, the plat, which forms part of the description as if it were actually copied therein, controls.

Likewise, in *Brehm* the First Circuit explained the creation of a right of passage by reference to a Plat of Survey depicting the servitude even where the instrument was silent as to the creation of the servitude therein:

> Predial servitudes may be natural, legal, and voluntary or conventional. Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or *conventional servitudes are established by juridical act*, prescription, or destination of the owner. La. C.C. art. 654. Predial servitudes may be established by an owner on his estate or acquired for its benefit. La. C.C. art. 697. The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the rules set forth in La. C.C. arts. 698 through 774. See La. C.C. art. 697. *A right of passage is an example of a predial servitude*. See La. C.C. art. 699. The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. La. C.C. art. 705. *The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply. La. C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. La. C.C. art. 722. Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. La. C.C. art. 730.*
>
> *A servitude of passage is created when one subdivides property by plat of survey that designates a right-of-way or servitude of passage and thereafter sells one or more tracts of land by reference to said survey, regardless of whether or not the instrument in question specifically describes or makes reference to the servitude. Bernard v. Broussard*, 538 So.2d 1093, 1094 (La. App. 3 Cir.), *writ denied*, 542 So.2d 1381 (La. 1989). Where an act of sale is silent as to an easement, but the survey plat referred to in the property description, which was attached to a previous act of sale that was recorded in the conveyance records, indicated that there was an easement, a servitude is created. *Templeton v. Jarreau,* 2018-0240 (La. App. 1 Cir. 9/24/18), 259 So. 3d 356, 362.

*Brehm v. Amacker*, 314 So.3d at 62–63.

These cases support the conclusion that the servitude created in the 1985 Act of Sale is a predial servitude created for the benefit of the Tract owned by Druscilla as the dominant estate so that this land would never become land locked in the future,

if and when Druscilla subdivided her land and conveyed the land to her assigns, and in turn, they continued to convey the land to successive owners. Additionally, the fact that every successive transfer of title to Tract 3 recited the Plat of Survey from 1985, that depicts the servitude of passage, is indicative that this servitude was not merely for the personal benefit of Druscilla.

Accordingly, we affirm the trial court's judgment.

## CONCLUSION

Douglas W. Stonicher and Rachal A. Stonicher raise three assignments of error. Each assignment asserts erroneous analysis by the trial court, namely: (1) failure to consider the language contained in the 1985 Cash Sale; (2) misapplication of *Tate v. South Central Bell Telephone Co.*, 386 So.2d 139; and (3) seeking the intent of the parties to the 1985 Cash Sale in establishing the right-of-passage at issue.

After de novo review of the question of law presented, we find that the right-of-passage in question is a predial servitude in favor of "Tract 2B 1" over the western border of "Tract 3", as established in the 1985 Cash Sale. The predial nature of the servitude is presumed. No evidence to the contrary is present in the record.

Accordingly, we find no error by the trial court in concluding the right-of-passage is a predial servitude. The judgment of the trial court is affirmed in all respects, and we assess all costs of this appeal to Douglas W. Stonicher and Rachal A. Stonicher.

**AFFIRMED.**

**TERRI L. BABINEAUX**

**VERSUS**

**DOUGLAS W. STONICHER, ET AL.**

FITZGERALD, Judge, dissenting with reasons.

I respectfully disagree that an affirmation is warranted in this case. In my view, the 1985 Cash Sale created a personal servitude not a predial servitude.

After all, the 1985 Cash Sale (including the attached plat) does not indicate that Druscilla Guidry Olivier owns Tract 2B 1. There is no mention of a dominate estate. And there is nothing indicating that the "right of passage" was created for the benefit of Tract 2B 1 as the dominant estate.